# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# NORTHERN DIVISION

| | | |
|---|---|---|
| DAVID U. FRALEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:18CV12 HEA |
| | ) | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff is not disabled and thus not entitled to disability insurance benefits or supplemental security income under Title II, 42 U.S.C. §§ 401-434, and Title XVI, 42 U.S.C. § 1381-1385, respectively. For the reasons set forth below the decision of the Commissioner is affirmed.

### Background and Procedural History

Plaintiff filed his applications for disability insurance benefits under Title II, and for SSI under Title XVI, on April 15, 2015. Plaintiff was born in 1980, reported an eighth grade education, and alleged disability beginning April 2, 2015. In his Disability Report, Plaintiff alleged disability due to seizures. Plaintiff's applications were denied initially. Following an administrative hearing on

November 17, 2016, Plaintiff's claims were denied in a written opinion by an ALJ, dated March 22, 2017. On December 28, 2017, the Appeals Council of the Social Security Administration denied Plaintiff's request for review. Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2019. She found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 2, 2015.

The ALJ found that Plaintiff had severe impairments of seizure disorder, degenerative disc disease with lumbar radiculopathy, peripheral neuropathy, depression, and anxiety. The ALJ did not find Plaintiff had an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. part 404, subpart P, appendix 1. In making this determination, the ALJ considered Plaintiff's seizure condition under the requirements of Listing 11.02, and Plaintiff's mental impairments under the requirements of Listings 12.04 and 12.06. In each case, the ALJ found that the requirements were not met.

The ALJ found that Plaintiff retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). Plaintiff can never climb ladders, ropes, or scaffolds, but can no more than occasionally climb stairs and ramps. He must avoid all exposure to work hazards

such as unprotected heights and being around dangerous moving machinery. Plaintiff cannot drive as a primary job function.  He must avoid being near fires or bodies of water (including bathing in the tub).  Plaintiff can tolerate occasional interaction with coworkers and supervisors.  He cannot tolerate any contact with the general public or any work completely alone.  The ALJ concluded that Plaintiff's impairments would not preclude him from performing work that exists in significant numbers in the national economy, those jobs including the light and unskilled jobs of electrical assembler, inspector/hand packager, and small parts assembler.

With respect to his seizure disorder, the ALJ found that Plaintiff's subjective complaints were out of proportion to the objective medical evidence, and that Plaintiff's reported symptoms were not consistent with his willingness to follow his doctors' recommendations.  For example, the ALJ noted that, despite his alleged seizure risk and concerns of injury during a seizure, Plaintiff admitted to chopping wood.  He admitted to going fishing at the creek and going to parks, even though his doctors advised him to avoid bodies of water.  Plaintiff also admitted to drinking alcohol even though he was advised by doctors that doing so lowered his seizure threshold.

## Standard of Review

The standard of review here is limited to a determination of whether the decision is supported by substantial evidence on the record as a whole. *See Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). Substantial evidence is less than preponderance, but enough that a reasonable mind might accept as adequate to support the Commissioner's conclusion. *See id.*

The Court must consider evidence that both supports and detracts from the Commissioner's decision but cannot reverse the decision because substantial evidence also exists in the record that would have supported a contrary outcome, or because it would have decided the case differently. *See Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015). If the Court finds that the evidence supports two inconsistent positions and one of those positions represents the Commissioner's findings, the Court must affirm the Commissioner's decision. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015). The Eighth Circuit has stated that "[w]e defer heavily to the findings and conclusions of the Social Security Administration." *Id.* (*quoting Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010)).

**Standard for Determining Disability**

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir.2010). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

A five-step regulatory framework is used to determine whether an individual claimant qualifies for disability benefits. 20 C.F.R. §§ 404.1520(a), 416.920(a); see also *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir.2011) (discussing the five-step process). At Step One, the ALJ determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I); *McCoy*, 648 F.3d at 611.

At Step Two, the ALJ determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a) (4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611.

At Step Three, the ALJ evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the ALJ proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the ALJ must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir.2009) (citing 20 C.F.R. § 404.1545 (a)(1)); see also 20 C.F.R. §§ 404.1520(e), 416.920(e). At Step Four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a) (4) (iv), 404.1520(f), 416.920(a) (4) (iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id*.

At Step Five, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to

other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

**Issue**

The sole issue raised by Plaintiff is whether the ALJ improperly found that Plaintiff did not meet the requirements of Listing 11.02 A.

**Did the ALJ err in finding that Plaintiff did not meet listing 11.02 A?**

"[T]he listings were designed to operate as a presumption of disability that makes further inquiry unnecessary. That is, if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). "If the claimant wins at the third step (a listed impairment), [ ]he must be held disabled, and the case is over." *Jones v. Barnhart*, 335 F.3d 697, 699 (8th Cir. 2003). But "[m]erely being diagnosed with a condition named in a listing and meeting some of the criteria will not qualify a claimant for presumptive disability under the listing. 'An impairment that manifests only some of [the listing] criteria, no matter how severely, does not qualify.' " *McCoy v. Astrue*, 648 F.3d 605, 611–12 (8th Cir. 2011) (*quoting Zebley*, 493 U.S. at 530). The burden is on the claimant to demonstrate that his impairment matches all the

7

specified criteria of a listing. *McDade v. Astrue*, 720 F.3d 994, 1001 (8th Cir. 2013).

Plaintiff claims that the ALJ erred in finding that Plaintiff's condition did not meet the requirements of Listing 11.02 A regarding epilepsy. Listing 11.02 A states:

> **11.02 <u>Epilepsy</u>, documented by a detailed description of a typical seizure and characterized by A, B, C, or D:**
>
> A. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once a month for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C).

Section 11.00 C states:

> <u>C. How do we consider adherence to prescribed treatment in neurological disorders?</u>
>
> In 11.02 (Epilepsy) . . . we require that limitations from these neurological disorders exist despite adherence to prescribed treatment. "Despite adherence to prescribed treatment" means that you have taken medication(s) or followed other treatment procedures for your neurological disorder(s) as prescribed by a physician for three consecutive months but your impairment continues to meet the other listing requirements despite this treatment. . . .

At the administrative hearing, Plaintiff testified that he had two to three seizures a month, or more. Dr. Kinkade, Plaintiff's treating physician, reported that Plaintiff suffered from frequently occurring tonic-clonic seizures, and the ALJ afforded great weight to Dr. Kinkade's assessment. However, the ALJ also noted evidence that Plaintiff was not adhering to his prescribed treatment.

Between April 2, 2015 and November 21, 2016, Plaintiff was visibly intoxicated, tested positive for alcohol, or reported that he had been drinking at six ER visits following seizures. Plaintiff admitted at the hearing that he had at least one doctor tell him to stop drinking any alcohol, but that he had not quit completely. Plaintiff claimed that his physician Dr. Batchu told him that "a couple beers a day wasn't going to hurt me."

Plaintiff's medical records show that Plaintiff was advised by multiple treating physicians on at least five occasions that alcohol lowered his seizure threshold. Twice, on April 16, 2015 and July 25, 2016, Plaintiff was advised to quit drinking completely. While Plaintiff reported that he was attempting compliance near the beginning of his alleged onset date, the record demonstrates that he never fully stopped drinking. Two of the six times that Plaintiff arrived at the ER under the influence of alcohol and complaining of seizures, his treating physicians discussed the negative effect of alcohol on his seizure disorder. Nevertheless, Plaintiff has repeatedly asserted to his treating physicians that alcohol does not cause or affect his seizures. Dr. Batchu noted Plaintiff's resistance to alcohol abstinence when he tried to discuss substance use with Plaintiff and his wife, who both "only defended his use of marijuana and ETOH [alcohol]."

Moreover, Plaintiff's testimony with respect to his substance use was inconsistent with the objective medical records. Plaintiff testified, for instance, that he had not used cannabinoids for six to eight months prior to the hearing, and that he "might have a beer after dinner or a beer before dinner." The medical records show that less than four months prior to the hearing, Plaintiff arrived at the ER where medical staff believed that he had been using marijuana and alcohol. During that same visit, Plaintiff defended his use of marijuana, thereby admitting to the use he later denied in his hearing testimony.

The ALJ's findings were supported by the medical evidence in the record, and there was substantial evidence for her to determine that Plaintiff was not in strict adherence to his prescribed treatment for at least three consecutive months.

## Conclusion

Based upon the foregoing, the ALJ's decision is based upon substantial evidence in the record.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.

A separate Judgment in accordance with this Opinion, Memorandum and

Order is entered this same dated.

Dated this 22nd day of March, 2019.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE